# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN SIMPSON, | ) |
| Plaintiff, | ) |
| | ) Case No. 17-cv-04165 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| SAGGEZZA, INC., ARVIND KAPUR, Individually, and SOCKALINGAM SUPPIAH, individually, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Defendant/Counter-Plaintiff, Saggezza, Inc. ("Saggezza") brings two counterclaims against Plaintiff/Counter-Defendant Steven Simpson for a claim of breach of fiduciary duty and fraudulent misrepresentation. The Counter-Defendant now moves this Court to dismiss Counter-Plaintiff's claims for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth below, Counter-Defendant's motion is denied.

## Background

The following facts are taken as true for the purpose of resolving this motion. In October 2014, Simpson met with Saggezza several times to determine if he was a qualified, good fit for the Senior Vice-President of Banking Solutions position. Around October 29, 2014, Saggezza offered Simpson the position and he accepted on November 1, 2014. Saggezza had developed a technology solution, TruVantage, that would help mid-sized financial institutions compete with larger, more analytically advanced ones. Part of Simpson's role was to lead the division that would market and develop TruVantage, building a loyal consumer base, branding it, and generating profitable revenue growth. He was the manager of the division, held decision-making authority over it, could fire or hire members of the team. As a leader in the company, Simpson was involved in all offsite meetings and was privy to Saggezza's confidential information.

1

During the interview process, Simpson knowingly misrepresented to Saggezza's leadership that he had "six banks in his backpocket" who he would bring to Saggezza as customers if he was hired. Saggezza had identified a second qualified candidate, but decided to hire Simpson instead based on these representations. Saggezza also gave Simpson a large base salary and invested nearly $5 million dollars into the TruVantage product based on his representations. Simpson did not have these contacts in hand as he stated, and he generated no new business for Saggezza.

On or about August 31, 2016, Simpson purchased the internet domain "fintechdsc.com" and around September, he began promoting his own data science and consulting firm, FinTech DS+C ("FinTech"), to the same clients that Saggezza targeted. Saggezza contends that Simpson breached his fiduciary duty by diverting business opportunities away from Saggezza and towards his own company, FinTech. Simpson was terminated on December 28, 2016 due to his poor performance as Senior Vice-President of Banking Solutions, which lead to the ultimate failure and termination of the division, as well as Saggezza losing millions of dollars.

On June 1, 2017, after several failed attempts to reach a resolution between the parties, Simpson filed a four-count Complaint against Saggezza. In response, Defendants filed two counterclaims in question for breach of fiduciary duty and fraudulent representation. Simpson now moves to dismiss the counterclaims in their entirety, alleging that they fail to meet the basic pleading standards.

**Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face and raising the right to relief above speculation. *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009). When reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and

draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Pisciota v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

**Analysis**

*Breach of Fiduciary Duty*

The first counterclaim complains that Simpson breached his fiduciary duty as senior personnel at Saggezza by usurping business that he was tasked with securing for Saggezza for his own benefit. Simpson moves to dismiss this claim, arguing that Saggezza failed to allege facts establishing Simpson as an officer or facts that he actually diverted business away from Saggezza for his own gain.

To establish a breach of fiduciary duty under Illinois law, 1) a fiduciary duty must exist; 2) that duty must be breached; and 3) the breach must proximately cause injury. *MPC Containment Sys. v. Moreland*, No. 05 C 6973, 2008 U.S. Dist. LEXIS 60546, at *34 (N.D. Ill. July 23, 2008)(Aspen, J.). Employees, as agents of their employer, are subject to fiduciary duty. *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). "It is a fundamental principle of agency law that agents owe fiduciary duties of loyalty to their principals not to (1) actively exploit their positions within the corporation for their own personal benefits; or (2) hinder the ability of the corporation to conduct the business for which it was developed." *Id.* at 303. Agents have been found to breach their fiduciary duty when, while still employees of the company, they solicit business of a customer before leaving the company or use the company's resources to assist them in developing their own business. *Id.*

This Court finds that Saggezza has alleged sufficient facts to establish the elements of the claim. The fact that Simpson is not a named officer is of no consequence to the analysis here, as courts have found that employees with certain roles and influence owe a similar fiduciary duty regardless of whether they formally hold the title. Courts courts determine whether a person qualifies as an officer with a fiduciary duty by examining the employee's management

3

responsibilities, the extent of corporate oversight and guidance over him, and whether he exercised any powers of an officer sanctioned by the company. *MPC Containment Sys.*, 2008 U.S. Dist. LEXIS 60546, at *35.

In *Foodcomm*, for example, the Seventh Circuit determined that the defendants owed a fiduciary duty because they were highly compensated, had authority and exclusive control over a division of the company, and their job description included autonomy and discretion. Here, similar to the employees in *Foodcomm*, Saggezza alleged that Simpson lead the banking solutions division, having decision-making and hiring-firing authority over the team. This division was critical to Saggezza's overall operation as it developed their most important product, TruVantage. Simpson was also alleged to be a part of the company's leadership team and had access to its confidential information. This type of involvement and influence certainly capture the hallmarks of a fiduciary. Saggezza also properly alleged a breach by indicating that Simpson set up FinTech, which offered the same services as Saggezza and solicited the clients that Simpson was charged with acquiring for Saggezza. At this stage, Saggezza need not plead facts that prove the underlying conduct of the breach. It is only required to plead plausible claims, which means that there is a reasonable expectation that discovery will uncover evidence that supports the allegation. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Finally, given the type of breach alleged—diverting business away from Saggezza, the Court can make the reasonable inference from the facts alleged that economic damage would result from the lost business opportunities. *See MPC Containment Sys.*, 2008 U.S. Dist. LEXIS 60546, at *35 (Illinois law allows the recovery of inferential lost profits for breach of a violation of fiduciary obligations).

Based on the above, Simpson's motion to dismiss Count I is denied.

*Count II*

Counterclaim II alleges that Simpson made fraudulent representations during the hiring process that Saggezza relied upon to their detriment. Simpson now argues that Counterclaim II should be dismissed because Saggezza failed to establish any element of fraudulent misrepresentation.

To establish a claim of fraudulent misrepresentation under Illinois law, a party must allege: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making it; (3) the intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Reliance on a fraudulent statement must be justifiable. *Rao v. Abbott Labs.*, No. 12 C 8014, 2013 U.S. Dist. LEXIS 58490, at *18 (N.D. Ill. Apr. 24, 2013)(Der-Yeghiayan, J.). Whether reliance is justified takes into account what the party knew or could have discovered through reasonable due diligence in light of the surrounding circumstances; however, a party is not justified if he had ample opportunity to find out the truth before acting. *Allstate Ins. Co. v. St. Anthony's Spine & Joint Inst., P.C.*, 691 F. Supp. 2d 772, 794 (N.D. Ill. 2010)(St. Eve, J.). While a fraud claim must be plead with sufficient specificity and particularity to apprise opposing party of what he is required to respond to, Rule 9(b) does not require a party to demonstrate that a representation was actually false. *See* Fed. R. Civ. P. 9(b); *Richmond v. Advanced Pain Consultants, S.C.*, No. 15 C 479, 2015 U.S. Dist. LEXIS 160394, at *8 (N.D. Ill. Nov. 30, 2015)(Kikoras, J.). A claim is sufficient if it at least establishes what representations were made, when, who made the representations and to whom the representations were made. *Richmond*, 2015 U.S. Dist. LEXIS 160394, at *8.

5

For a statement to be fraudulent, it has to rely on a past or present fact. *Enter. Warehousing Sols., Inc. v. Capital One Servs.*, No. 01C 7725, 2002 U.S. Dist. LEXIS 4335, at *17 (N.D. Ill. Mar. 14, 2002)(Darrah, J.). Expressions of opinions, expectations, or future contingent events do not qualify. *Id.* Simpson's statement that he presently had six banks in his network that he would bring to Saggezza if hired is not aspirational puffery or an opinion. This statement was offered as a definitive fact since it provided a precise number and guarantee of future conduct contingent upon a real event, acceptance of an employment offer. *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999); *cf. Jada Toys, Inc. v. Chi. Imp., Inc.*, No. 07 C 699, 2008 U.S. Dist. LEXIS 29286, at *6 n.4 (N.D. Ill. Apr. 10, 2008)(Brown, J.). Considering that Saggezza was actively inquiring into Simpson's qualifications and resources when he made the statement, it was not unreasonable for Saggezza to believe and rely on it. The position Simpson was applying to required client connections, and Simpson had significant experience in the banking industry, adding validity to his claim. Saggezza was at a disadvantage in verifying whether this information was true, as only Simpson had first-hand knowledge of what resources he could actually bring to the company. Reliance on the statement was justifiable here. Further, the fact that Saggezza alleged that it would have hired another candidate but for their reliance on Simpson's statement is sufficient to demonstrate that the statement was material. The first element is met.

On the second element, whether Simpson knew or believed his statement was false at the time is inapposite since proof actual falsity is not required at the pleading stage under Rule 9(b). Even so, taking the allegations in a light most favorable to Saggezza, the falsity of the statement is supported by the fact that Simpson did not attract any new clients during his two-year tenure as Senior Vice-President despite claiming to have six potential clients in hand. Additionally, Simpson made the fraudulent statement during an interview in hopes of being hired, so the third element is also supported by the allegations. Finally, Saggezza sufficiently alleged damages by stating that

6

Saggezza hired and paid Simpson a large base salary then invested millions into TruVantage based on his false representation that he would develop the division's client-base. The counterclaim sufficiently alleges that Saggezza acted on the reliance and suffered damage as a result.

The Court finds that the counterclaims contain sufficient detail to establish the elements of a fraudulent misrepresentation claim. Therefore, Simpson's motion to dismiss Counterclaim II is denied.

**Conclusion**

For the above reasons, Simpson's motion to dismiss Saggezza's counterclaims is denied.

IT IS SO ORDERED.

ENTERED: SHARON JOHNSON COLEMAN
United States District Court Judge

Dated: 9/21/2018